OPINION OF THE COURT
Stanley Gartenstein, J.
Respondent is charged with resisting arrest (Penal Law, § 205.30), an act which if committed by an adult would constitute a class A misdemeanor. The predicate offense to which the police officer originally responded was disorderly conduct (Penal Law, § 240.20), a violation not rising to the level of a crime, and hence an act for which respondent as a juvenile cannot be found to be a juvenile delinquent (Matter of David W., 28 NY2d 589).
In support of a trial motion for dismissal, it is argued that a charge of resisting arrest can only be sustained when probable cause to make an arrest for a predicate offense exists (People v Stevenson, 31 NY2d 108); that, inasmuch as juvenile delinquency is classically defined as an act which would be a crime if committed by an adult (viz., felony or misdemeanor, but not a violation) there being no underlying actionable conduct upon which re *378 spondent may be found to be criminally liable, there is accordingly no predicate upon which the resisting arrest charge may be sustained.
Respondent cites the decision of our colleague, the Honorable Aileen Haas Schwartz, in Matter of Clive W. (109 Misc 2d 788), as authority. We have read the erudite opinion of our colleague and have afforded it great weight and respectful consideration. Nevertheless, we are impelled to disagree and accordingly hold to the contrary.
The crime of resisting arrest is defined by section 205.30 of the Penal Law as follows: “A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a * * * peace officer from effecting an authorized arrest of himself or another person.”
In Matter of Clive W. (supra), our colleague cites People v Stevenson (31 NY2d 108, supra) for the proposition that in order to be an authorized arrest within the meaning of this statute, the prosecution must prove beyond a reasonable doubt that compliance has been had “with the rules of arrest governed by constitutional, common-law and statutory standards” (Matter of Clive W., supra, at p 790).
In its very introductory remarks, Clive W. (supra, p 789) frames the issue as follows: “Does section 35.15 of the Penal Law, ‘Justification; use of physical force in defense of a person’, comprehend physical force against an arresting officer?”
While we agree that justification in resisting arrest may indeed be an issue under proper circumstances, we respectfully dissent, in view of the existence of section 35.27 of the Penal Law and its application to the crime of resisting arrest by appellate tribunals, to Clive W.’s application of the more general and, at best, tangentially relevant provisions of section 35.15 to the crime at issue.
Section 35.27 provides as follows: “§ 35.27. Justification; use of physical force in resisting arrest prohibited. A person may not use physical force to resist an arrest, whether authorized or unauthorized, which is being effected or attempted by a * * * peace officer when it would reasonably appear that the latter is a * * * peace officer.”
In People v Simms (36 AD2d 23), the Appellate Division, Fourth Department, applying this statute to a situation *379 where conviction for the crime of resisting arrest followed dismissal of the underlying predicate offense of carrying an open can of alcoholic substance on a public street, quoted with approval the Practice Commentaries on that section in McKinney’s Consolidated Laws of New York (Hechtman, Book 39, Penal Law, § 35.27, p 111) as follows: “The rationale of this so-called ‘no sock’ principle is that to authorize or encourage a person to engage an arresting officer in combat because of a difference of opinion concerning the validity of the arrest being effected or attempted produces an unhealthy situation; that orderly procedure dictates peaceful submission to duly constituted law enforcement authority in the first instance”.
While it is true that People v Stevenson (supra) was decided on the basis of the terms of section 35.15 of the Penal Law (as cited by our colleague in Matter of Clive W., supra) that decision hinged on the specific instructions given by the trial court to the jury which happened to be framed under that statute. The ruling of the Court of Appeals which was called upon to pass upon the procedural facts as they existed rather than as they might ideally have existed, does not diminish the import of section 35.27 as the more appropriate statute.*
Our colleague in Clive W. further relies on Stevenson for the proposition that the arresting question must be an “authorized” one based upon a probable cause standard sufficient to pass constitutional muster. Assuming, arguendo, that the standard for arrest is a state of underlying facts which would support a constitutionally sufficient determination of probable cause, the fact remains that “probable” or “reasonable cause” as used in the context of the arrest statutes (both terms are synonymous, cf. People v Lombardi, 18 AD2d 177, affd 13 NY2d 1014; People v Malinsky, 20 AD2d 672) admits of a standard far less than that required to sustain guilt beyond a reasonable doubt (People v Lane, 10 NY2d 374). As stated by the Supreme *380 Court in a classic definition first enunciated by Chief Justice Marshall in Locke v United States (7 Crunch [11 US] 339, 348): “It may be added, that the term 'probable cause,’ according to its usual acceptation, means less than evidence which would justify condemnation * * * It * * * imports * * * circumstances which warrant suspicion.”
To puncture a prevailing notion which is legally unfounded, it is accordingly unnecessary that the underlying predicate offense become the subject of a conviction even if charged (People v Alley, 76 Misc 2d 589) so long as there existed in the eyes of the arresting officer, probable cause, viz., suspicion, that it was being committed. The test has been stated by the Court of Appeals in People v Coffey (12 NY2d 443, 451): “The substance of all the definitions of probable cause, wrote the Supreme Court in Brinegar v. United States (339 U. S. 160,175), is a' “reasonable ground for belief of guilt.’””
As concisely summarized by Mr. Justice J. Irwin Shapiro (later of the App Div, 2d Dept) in People v Johnson (42 Misc 2d 164), the distinguishing feature of probable cause sufficient to support an arrest is appearances as opposed to what the actual facts may turn out to be. “It should be emphasized that the facts and circumstances which must exist before an arrest may legally be made without a warrant are not such facts as may convince a jury beyond a reasonable doubt of defendant’s guilt. In the case of an arrest we are dealing with appearances, whereas in the case of a finding of guilt we are dealing with facts” (42 Misc 2d, at p 166.)
Thus, to follow the emphasis of Johnson (supra), if it reasonably appeared to the police officer that an arrestable offense was being committed, and that the person committing it was of an age wherein he would properly be chargeable with this offense, the officer did in fact have probable cause to effectuate an arrest, resistance to which constitutes the added crime of resisting arrest. The ultimate reality that respondent was actually underage only goes to his convictability of the predicate offense and does not extend to the appearance he makes to the officer of being a person properly chargeable with it. From a legal standpoint, the antisocial conduct proscribed by the Penal Law *381 exists independently of respondent’s defense of infancy to convictability therefor. (Cf. Matter of Andrew M., 91 Misc 2d 813.)
To be sure the measure of probable cause in the case of a juvenile is the same as with any other instance requiring probable cause. If, therefore, to all appearances it is impossible that a reasonable person would take a particular juvenile as being over the jurisdictional age of 16, the predicate for an arrest would be nonexistent and the charge necessarily dismissed. But this is far from the case at bar. This respondent reasonably appeared to be over 16 and thus liable under the Penal Law for disorderly conduct. The fact that he was in actuality not convictable only serves to cancel out any charge based on an offense for which he is not liable because of age and does not nullify the existence of probable cause, i.e., the appearance of things as the officer perceived them.
Based upon the foregoing, we respectfully arrive at a conclusion different from that of our colleague in Clive W. (109 Misc 2d 788, supra).
We believe that consideration of probable cause inevitably must require a case-by-case totality of circumstances approach (cf. People v Martin, 32 NY2d 123; People v McRay, 51 NY2d 594; People v Boyd, 78 AD2d 225) an approach which is effectively negated by Clive W.’s across-the-boards negation of this crime by judicial construction. The Legislature has recognized that the police officer on the streets is a symbol of the law no less than the Judge in the courtroom. An assault on this authority is a frontal assault on society itself. The Legislature, having defined this as a serious crime, is entitled to be taken at its word.
The motion to dismiss is denied. After trial, respondent is convicted beyond a reasonable doubt as charged.

 The possibility of reading section 35.27 of the Penal Law (and, on a more general basis, Penal Law, § 35.15) in juxtaposition with rather than independently of section 205.30 has given rise to an unfortunate blurring of the applicable law. For interesting comparison, cf. People v Doe, 85 Misc 2d 592; People v Barton, 30 AD2d 726; People v Alley, 76 Misc 2d 589; People v Lyke, 72 Misc 2d 1046. In particular, Alley (at p 597) and Lyke (at p 1049) contain incisive analyses of this problem.